**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MARK STULTZ,

Plaintiff, Case No.:

v.

JEA,

Defendant.

_____________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, MARK STULTZ (hereinafter "Plaintiff" or "Stultz"), by and through the undersigned attorneys, and files this Complaint and Demand for Jury Trial against Defendant, JEA (hereinafter "Defendant" or "JEA"). In support thereof, Plaintiff states as follows:

### NATURE OF THE ACTION

1. This is an action to remedy Defendant's violation of the anti-discrimination provisions of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (hereinafter "ADEA").

2. This is an action to remedy Defendant's violations of the anti-discrimination provisions of the Florida Civil Rights Act of 1992, Florida Statutes section 760.01, et seq. (hereinafter "FCRA").

### PARTIES

3. Plaintiff is a natural person who, at all times relevant to this action, was an employee of Defendant.

4. At all times relevant to this Complaint, Plaintiff was an individual residing in Duval County, Florida, where he performed his work for Defendant and in which the adverse employment action alleged herein occurred.

5. Plaintiff was over the age of forty years old at the time JEA terminated his employment.

6. Plaintiff is therefore within the class of persons protected by the ADEA and FCRA.

7. Plaintiff is a "person" for purposes of the FCRA, as that term is defined by section 760.02(6), Florida Statutes.

8. At all times relevant to this Complaint, Plaintiff was an "employee" of JEA for purposes of the ADEA, as that term is defined by 29 U.S.C. § 630(f).

9. Defendant, JEA, is a body politic and corporate and municipal utility created by the City of Jacksonville, operating as an independent agency of the Consolidated City of Jacksonville, with its principal place of business at 225 North Pearl Street, Jacksonville, Duval County, Florida 32202.

10. At all times relevant to this Complaint, JEA employed more than twenty (20) employees in each of twenty or more calendar weeks in the current or preceding calendar year.

11. JEA is an "employer" for purposes of the ADEA, as the term is defined by 29 U.S.C. § 630(b).

12. JEA is an "employer" for purposes of the FCRA, as the term is defined by section 760.02(7), Florida Statutes.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over Plaintiff's ADEA claim pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States, and pursuant to 29 U.S.C. § 626(c)(1).

14. This Court has supplemental jurisdiction over Plaintiff's FCRA claim pursuant to 28 U.S.C. § 1367(a), because the FCRA claim is so related to the ADEA claim that it forms part of the same case or controversy and arises from a common nucleus of operative fact.

15. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(1) and (2), because JEA resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Venue is proper in the Jacksonville Division pursuant to Local Rule 1.04, because the events giving rise to this action occurred in Duval County, Florida.

## ADMINISTRATIVE PREREQUISITES

16. On September 23, 2024, Plaintiff timely filed a Charge of Discrimination alleging age discrimination against JEA with the United States Equal Employment Opportunity Commission (hereinafter the "EEOC"), Charge No. 510-2024-11639, which, by application of section 760.11(1), Florida Statutes, and the worksharing agreement between the agencies, was dual-filed with the Florida Commission on Human Relations (hereinafter the "FCHR").

17. Plaintiff's Charge of Discrimination was filed within three hundred (300) days of JEA's July 26, 2024 notice terminating his employment, as required by 29 U.S.C. § 626(d)(1)(B), and within three hundred sixty-five (365) days of the discriminatory act, as required by section 760.11(1), Florida Statutes.

18. More than sixty (60) days elapsed between the filing of Plaintiff's Charge of Discrimination and the filing of this action, as required by 29 U.S.C. § 626(d)(1).

19. On August 25, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights, notifying Plaintiff of his right to file a civil action against JEA in federal or state court.

20. This action is filed within ninety (90) days of Plaintiff's receipt of the Determination and Notice of Rights, as required by 29 U.S.C. § 626(e).

21. The FCHR failed to make any determination regarding whether reasonable cause exists within one hundred eighty (180) days of the filing of Plaintiff's Charge of Discrimination.

22. On September 8, 2026, the FCHR issued a Notice of State Rights – Dual Filed Complaint, advising that Plaintiff may bring a civil action against JEA in any court of competent jurisdiction pursuant to sections 760.11(4) and (8), Florida Statutes.

23. This action is timely filed under section 760.11, Florida Statutes.

24. Plaintiff has satisfied all conditions precedent and exhausted all administrative prerequisites to filing this action, or such conditions have been waived or excused.

## GENERAL ALLEGATIONS

25. On or about January 31, 2022, JEA hired Mr. Stultz to serve as its Vice President, Communications.

26. While not required of other senior executive hires during that time, Mr. Stultz and his family nonetheless agreed to his relocation from out of state to accept employment with JEA.

27. As Vice President, Communications, Mr. Stultz led JEA's communications organization, which is responsible for, among other things, communicating outages and the availability of utility services to the more than 500,000 customers JEA serves in Duval County and portions of Clay, Nassau, and St. Johns Counties.

28. Mr. Stultz was well qualified for his position and performed his job well throughout his employment, rated as meeting expectations for fiscal year 2022 and, in his most recent completed annual performance evaluation, for fiscal year 2023, exceeds expectations.

29. In early 2024, JEA restructured certain departments and modified its reporting structures. As part of that restructuring, JEA increased the number of employees reporting to Mr. Stultz, and Mr. Stultz absorbed managerial authority over a team of employees who had previously worked outside of the

communications department, entrusting Mr. Stultz with greater responsibility only months before it terminated him.

30. In approximately February 2024, under then-Chief Executive Officer Jay Stowe and Chief Human Resources Officer David Emanuel, JEA removed three older Vice Presidents, ages fifty-six (56), sixty-seven (67), and sixty-seven (67), from their Vice President positions and reassigned them to "Strategic Project Assignment" positions.

31. Upon information and belief, JEA, through its human resources department, initially sought to separate older Vice Presidents from employment, but ultimately rescinded or abandoned those separations and returned the executives to work after it was raised that JEA's decisions to remove these older executives were motivated by their age.

32. In approximately April 2024, JEA's Board of Directors accepted Mr. Stowe's resignation and appointed Vickie Cavey as JEA's Interim Managing Director and Chief Executive Officer.

33. In the spring and summer of 2024, JEA's Board of Directors undertook to retain an outside, third-party "business excellence" consulting firm to conduct an in-depth review of JEA's organization, operations, and structure and to recommend how JEA should be structured and staffed.[1]

[1] As of March 2025, more than seven months after JEA terminated Mr. Stultz, that consulting firm had still not delivered its final report.

34. Separately, JEA requested a benchmark analysis of its communications organization, including input from an independent third-party consultant at a comparable Florida municipal utility, in order to evaluate JEA's communications operations and staffing.

35. On July 26, 2024, before the communications benchmark analysis was completed, and before the business excellence consultant had delivered any findings or recommendations regarding JEA's structure, JEA notified Mr. Stultz that his position as Vice President, Communications was being eliminated and that his employment would end effective August 9, 2024.

36. At the time of his termination, Mr. Stultz was over the age of forty (40) years of age and was one of the oldest Vice Presidents at JEA.

37. JEA characterized the termination of Mr. Stultz' employment as the result of a restructuring intended to reduce the number of Vice President positions at JEA.

38. In the course of that same restructuring, however, JEA did not terminate the substantially younger Vice Presidents whose Vice President positions were likewise eliminated.

39. Instead, effective on or about July 29, 2024, JEA placed two substantially younger Vice Presidents, ages thirty-nine (39) and forty-one (41), into Director-level positions, allowing them to continue their employment with JEA.

40. Subsequently, both of these two younger individuals were later "re-promoted" to the level and title of vice president, contrary to the stated rationale of reducing the number of VP roles within the organization.

41. In addition, a subsequent public records request produced organizational charts demonstrating that Mr. Stultz's same communications oversight accountabilities and personnel contingent were soon re-established within the same department, and filled by a younger individual with a modified senior executive title.

42. JEA likewise placed other Vice Presidents whose Vice President positions were eliminated in 2024 into Strategic Project Assignment, Director, Deputy Chief, or Chief of Staff positions, allowing them to continue their employment with JEA.

43. Upon information and belief, Mr. Stultz was the only Vice President whose position JEA eliminated in 2024 who was involuntarily separated from employment without being offered a continuing position.

44. JEA did not offer Mr. Stultz a Director-level position nor any other position, and did not discuss with Mr. Stultz any alternative to termination, notwithstanding his qualifications, his strong performance record, and JEA's continuing need for an employee with his knowledge and experience in utility communications.

45. Following JEA's 2024 reorganization, every Vice President JEA retained was younger than Mr. Stultz.

46. Mr. Stultz' job duties were not eliminated: communicating outages and services available to the community is "essential," and the functions previously performed by Mr. Stultz have continued to be performed by a substantially younger, lower-level employee.

47. Despite being qualified to perform the duties of the Director, Communications role, which consists of the functions he had successfully performed as Vice President, Communications, JEA did not offer Mr. Stultz that role, as it had done for substantially younger Vice Presidents whose positions were eliminated.

48. At the time of Mr. Stultz' termination, JEA did not contend that Mr. Stultz was selected for termination because of any performance deficiency. To the contrary, JEA presented the decision solely as the elimination of his position and offered Mr. Stultz a severance package.

49. JEA selected Mr. Stultz for termination based on his age.

50. JEA knew that the ADEA and the FCRA prohibit age discrimination in employment, and were made aware, months earlier, that its attempted removal of other older Vice Presidents appeared to be motivated by age, yet it it proceeded to terminate its oldest Vice President while retaining substantially younger Vice Presidents.

51. JEA's violation of the ADEA was knowing and willful and/or undertaken in reckless disregard of whether its conduct was prohibited by the ADEA.

52. As a direct and proximate result of JEA's discriminatory conduct, Mr. Stultz has suffered, and continues to suffer, damages, including, but not limited to, loss of past and future wages, compensation, and benefits, as well as emotional pain and suffering, mental anguish, humiliation, and loss of enjoyment of life.

53. Plaintiff has retained the undersigned attorneys to represent him in this action and is obligated to pay them a reasonable fee for their services.

**COUNT I: AGE DISCRIMINATION IN VIOLATION OF THE ADEA**

54. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-53 above as if fully set forth herein.

55. The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1).

56. At all times material, Plaintiff was over forty (40) years of age and was qualified for his position as Vice President, Communications and for the Director, Communications role.

57. JEA violated the ADEA when it discriminated against Plaintiff and treated him less favorably than his substantially younger colleagues, specifically by terminating his employment, and by failing to place him in a continuing position, as it did for younger Vice Presidents, due to his age.

58. Plaintiff's age was the but-for cause of JEA's decision to terminate his employment.

59. JEA's violation of the ADEA was willful within the meaning of 29 U.S.C. § 626(b), as JEA knew its conduct was prohibited by the ADEA or showed reckless disregard for whether the ADEA prohibited its conduct, entitling Plaintiff to an award of liquidated damages.

60. As a direct and proximate result of JEA's violation of the ADEA, Plaintiff has suffered, and continues to suffer, monetary damages, including, but not limited to, loss of past and future wages, compensation, and benefits, for which Plaintiff is entitled to relief under 29 U.S.C. § 626(b) and (c), including an award of attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and award the following relief:

a. A declaration that JEA's conduct violated the ADEA;

b. An order enjoining JEA from engaging in the discriminatory practices set forth above;

c. Reinstatement to his former position or a comparable position or, in the alternative, front pay and benefits;

d. Back pay and lost benefits;

e. Liquidated damages in an amount equal to his back pay and lost benefits;

f. Pre-judgment and post-judgment interest as permitted by law;

g. Reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 626(b) and 29 U.S.C. § 216(b); and

h. Such other and further relief as this Court deems just and proper.

**COUNT II: AGE DISCRIMINATION IN VIOLATION OF THE FCRA**

61. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-53 above as if fully set forth herein.

62. The FCRA makes it an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . age[.]" § 760.10(1)(a), Fla. Stat.

63. JEA violated the FCRA when it discriminated against Plaintiff and treated him less favorably than his substantially younger colleagues, specifically by terminating his employment, and by failing to place him in a continuing position, as it did for substantially younger Vice Presidents, because of his age.

64. As a direct and proximate result of JEA's discriminatory conduct in violation of the FCRA, Plaintiff has suffered, and continues to suffer, damages, including, but not limited to, loss of past and future wages, compensation, and benefits, as well as emotional pain and suffering, mental anguish, humiliation, and loss of enjoyment of life, for which Plaintiff is entitled to relief under section 760.11(5), Florida Statutes, including an award of attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, JEA, and award the following relief:

a. An order prohibiting the discriminatory practices set forth above;

b. Reinstatement to his former position or a comparable position or, in the alternative, front pay and benefits;

c. Back pay and lost benefits;

d. Compensatory damages, including damages for emotional pain and suffering, mental anguish, humiliation, and loss of enjoyment of life;

e. Post-judgment interest;

f. Reasonable attorneys' fees and costs pursuant to section 760.11(5), Florida Statutes; and

g. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 16th day of October 2026.

**DELEGAL POINDEXTER**
**& UNDERKOFLER, P.A.**

*<u>/s/ Alexandra E. Underkofler</u>*
ALEXANDRA E. UNDERKOFLER
Lead Counsel
Florida Bar No.: 1018209
Email: alex@delegal.net
T.A. DELEGAL, III
Florida Bar No.: 892701
Email: tad@delegal.net
Secondary Email: office@delegal.net
JAMES C. POINDEXTER
Florida Bar No.: 0116039
Email: james@delegal.net
424 E. Monroe Street
Jacksonville, Florida 32202
Telephone: (904) 633-5000
Facsimile: (904) 358-2850
Attorneys for Plaintiff